UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HIDRÓGENO CADEREYTA, S.A.P.I. DE C.V.,

Petitioner,

v.

PETRÓLEOS MEXICANOS

Respondent.

---

Case No. _____

## PETITION TO RECOGNIZE AND ENFORCE FOREIGN ARBITRAL AWARD

Bernardo M. Cremades Román

B. CREMADES Y ASOCIADOS, S.L.
Calle Goya 18, Planta 2
28001 Madrid
Kingdom of Spain
Tel.: +34 914 237 200
www.bcremades.com

*Attorneys for Hidrógeno Cadereyta, S.A.P.I. de C.V.*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 2

PARTIES ........................................................................................................................ 3

JURISDICTION AND VENUE .................................................................................. 4

FACTUAL BACKGROUND ...................................................................................... 6

   A.   The Contract Between Hidrocadereyta and Pemex Tri ................................ 6

   B.   The Arbitration .............................................................................................. 8

ARGUMENT ............................................................................................................... 14

   A.   Petitioner Has Satisfied All of the Statutory Conditions for Recognition and Enforcement ....................................................................................................... 15

   B.   None of the Limited Grounds to Refuse Recognition and Enforcement Exist .................. 17

CONCLUSION ........................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Agility Public Warehousing Co. v. Supreme Foodservice GmbH,*
   840 F. Supp. 2d 703 (S.D.N.Y. 2011), aff'd, 495 F. App'x 149 (2d Cir. 2012)……...…..14, 17

*Banco de Seguros del Estado v. Mut. Marine Offices, Inc.,*
   257 Supp. 2d 681 (S.D.N.Y. 2003)……………………………………………………..15

*CC/Devas (Mauritius) Ltd., et. Al v. Antrix Corp. Ltd.,*
   605 U.S. 223, 145 S. Ct. 1572, 221 L. Ed. 2d 867 (2025)………………………………………5

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.,*
   776 F.3d 126 (2d Cir. 2015)……………………..…………..……………………14

*Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion,*
   832 F.3d 92 (2d Cir. 2016)...……………………………………………………4, 14, 15

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,*
   40 F.4th 56 (2d Cir. 2022)……………………………………………..……………..14

*Gomez de Hernandez v. Wells Fargo Advisors, LLC,*
   No. 16 CIV 9922 (LGS), 2017 WL 3088396 (S.D.N.Y. 2017)……………..……..............14

*MGM Productions Group v. Aeroflot Russian Airlines,*
   573 F. Supp. 2d 772 (S.D.N.Y. 2003), aff'd, 91 F. App'x 716 (2d Cir. 2004)……………...17

*Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.,*
   23 F.3d 41 (2d Cir. 1994)…………………………………………….…………...14

*Scherk v. Alberto-Culver Co.,*
   417 U.S. 506 (1974)………………………………………………..................……14

*Telenor Mobile Commc'ns AS v. Storm LLC,*
   584 F.3d 396 (2d Cir. 2009)…………………………………..………………………14, 17

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,*
   126 F.3d 15 (2d Cir. 1997)………………………………………………….…15

*Zeiler v. Deitsch,*
   500 F.3d 157 (2d Cir. 2007)…………………………………………………...14

**Statutes**

28 U.S.C. §§ 1330, 1391, 1602-1611 ……………………………………...…    *passim*

9 U.S.C. §§ 201-207, 301, 302, 305……………………………………….    *passim*

21 U.S.T. 2517 (New York Convention) ………………………………….    *passim*

1438 U.N.T.S. 245 (Panama Convention) ………………………………...    *passim*

Petitioner *Hidrógeno Cadereyta, S.A.P.I. de C.V.* ("**Hidrocadereyta**" or "**Petitioner**"), by and through its attorneys, alleges as follows in support of its Petition to Recognize and Enforce a Foreign Arbitral Award pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "**New York Convention**"), the Inter-American Convention on International Commercial Arbitration of January 30, 1975, 1438 U.N.T.S. 245 (the "**Panama Convention**"), and Chapters 2 and 3 of Title 9 of the Federal Arbitration Act (the "**FAA**"). This Petition concerns a foreign arbitral award dated December 22, 2023 (the "**Award**"),[1] rendered in the arbitration (the "**Arbitration**") between Petitioner and Pemex Transformación Industrial ("**Pemex Tri**").[2] As the Award indicates, Pemex Tri was formerly known as Pemex Refinación. Zamora Decl., Exh. A, ¶ 3. The Award was served on Hidrocadereyta on February 17, 2023. Zamora Decl., Exh. B, ¶ 11. On March 14, 2023, Hidrocadereyta filed a Request for Correction of the Award, and on June 16, 2023, the arbitral tribunal (the "**Tribunal**") subsequently issued an addendum (the "**Addendum**"),[3] which modified and finalized the Tribunal's determination. The Addendum was served on Petitioner of July 10, 2023. Zamora Decl., ¶ 15. The Award, as supplemented and finalized by Addendum (collectively, the "**Final Award**"), is the subject of this Petition.

In March 2025, Pemex Tri was dissolved by operation of Mexican law, with Petróleos Mexicanos ("**Pemex**") assuming all rights and obligations of Pemex Tri. Zamora Decl., ¶ 8, Exh. E. As a result, Pemex is the named respondent in this proceeding and is referred to herein as the

---

[1] A true and correct copy of the Award in the original Spanish, accompanied by a certified English translation, is attached as <u>Exhibit A</u> to the January 29, 2026 Declaration of Rodrigo Zamora Etcharren ("**Zamora Decl.**").

[2] The complete official name of Pemex Tri is Pemex Transformación Industrial, S.A. de C.V.

[3] A true and correct copy of the Addendum in the original Spanish, accompanied by a certified English translation, is attached as <u>Exhibit B</u> to the Zamora Decl.

"**Respondent**" (Petitioner and Respondent are referred to individually as a "**Party**" and collectively as the "**Parties**").[4]

The Arbitration, captioned *Hidrógeno Cadereyta, S.A.P.I. de C.V. vs. PEMEX Transformación Industrial*, was seated in Mexico City, Mexico and conducted under the 2012 Rules of the International Chamber of Commerce ("**ICC Rules**").

## PRELIMINARY STATEMENT

1.    On July 9, 2013, Petitioner and Pemex Refinación entered into a Mixed Public Works Contract (*Contrato de Obra Publica Mixto*) No. PXR-OP-SCC-SPR-GPA-L-10-13 (the "**Contract**"), which was awarded to Petitioner through an open international public tender.[5] The purpose of the Contract was the development and commissioning of a new hydrogen generation plant No. 2 and the completion of a 12-inch-diameter gas pipeline to transport high-pressure natural gas from the Ramones-Escobedo branch to the interior of the 'Ing. Héctor R. Lara Sosa' refinery, located in the city of Cadereyta Jiménez, Nuevo León, México.

2.    On November 18, 2014, Pemex Refinación, along with other subsidiaries of Pemex, were reorganized into Pemex Tri. The agreement establishing Pemex Tri entered into force on November 1, 2015, whereby the latter assumed the rights and obligations of Pemex Refinación, including the Contract. Zamora Decl., ¶ 7, Exh. D.

3.    The Contract provided that the works were to be executed and completed by December 10, 2015, in accordance with the General Work Execution Program. Zamora Decl., Exh. C, Annex 40. That deadline was later modified by an agreement ("**First Amendment Agreement**") to

---

[4] All capitalized terms not specifically defined in this Petition retain their meaning as defined in Zamora Decl., Exh. A.

[5] A true and correct copy of the Contract in the original Spanish, accompanied by a certified English translation of the relevant portions, is attached as Exhibit C to the Zamora Decl.

extend the termination date to April 22, 2016. Zamora Decl., Exh. A, ¶ 154. On March 22, 2016, Petitioner notified Pemex Tri that certain breaches were occurring. *Id.* at ¶ 155.

4.    On April 1, 2016, Petitioner and Pemex Tri signed an agreement ("**Minute of Agreement**") to suspend works for 120 calendar days, until July 29, 2016. *Id.* at ¶ 162. A second suspension letter was signed by both parties. *Id.* at ¶ 163. However, on November 22, 2016, Pemex Tri unilaterally decided it would continue a temporary suspension for another 116 calendar days. *Id.* at ¶ 164. After that, Pemex Tri, on twenty additional occasions, unilaterally sent notice to Petitioner that it would extend suspension for 90-92 days. *Id.* at ¶ 165.

5.    Pursuant to the dispute resolution clause in the Contract, on January 30, 2020, Petitioner initiated the Arbitration against Pemex Tri under the ICC Arbitration Rules. *Id.* at ¶ 12.

6.    On February 17, 2023, the Tribunal served upon Petitioner the initial Award, which contained inconsistencies affecting fundamental aspects of the dispute, including the amounts owed by Pemex Tri. Zamora Decl, Exh. B, ¶ 11. As a result, Petitioner requested a Request for Correction on March 14, 2023. *Id.* at ¶ 12. On June 16, 2023, the Tribunal issued the Addendum, which with the Award constituted the Final Award, ordering Pemex Tri to "(i) pay MXN 61,097,036.53 and USD 10,375,795.24 for Approved and Pending Payment Estimates; (ii) pay MXN 10,933,915.9 and USD 1,037,447.15 for Pending Approval and Payment Estimates." *Id.* at ¶ 77(C)(2). Respondent, as the current entity responsible for this debt, has refused to pay the amounts due under the Final Award. Zamora Decl, ¶ 21. Therefore, Petitioner now seeks to recognize and enforce the Final Award, in accordance with the New York Convention, Panama Convention and the FAA.

## **PARTIES**

7.    Petitioner Hidrocadereyta is a corporation organized under the laws of Mexico, with its

principal place of business at Ejercito Nacional No. 453, Floor 6, Colonia Granada, Miguel Hidalgo, 11520, Mexico City, Mexico.

8.    As noted above, Pemex Tri, the respondent in the Arbitration, was dissolved as a matter of Mexican law in March 2025, with Pemex assuming all rights and obligations of Pemex Tri. Zamora Decl., ¶ 8, Exh. E. As a result, Pemex became, and is currently, the debtor for the amounts owed pursuant to the Final Award.

9.    Respondent Pemex is a corporation organized under the law of Mexico and a state-owned production company. It is headquartered at Avenida Marina Nacional 329, Ground Floor, Colonia Verónica Anzures, Miguel Hidalgo, 11300, Mexico City, Mexico.

## JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction in this proceeding pursuant to 9 U.S.C. §§ 203, 302, which provide that United States District Courts shall have original jurisdiction over actions and proceedings governed by the New York Convention and the Panama Convention. Both Mexico and the United States are signatories to the New York and Panama Conventions.

11.   This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that United States District Courts shall have original jurisdiction over any nonjury civil action against a foreign state, as defined in 28 U.S.C. § 1603(a), unless the foreign state is entitled to immunity under 28 U.S.C. §§ 1605-1607 or an applicable international agreement. Section 1603(a) defines a "foreign state" to include "an agency or instrumentality," as defined in § 1603(b). Respondent is a State-owned entity, wholly owned by Mexico, and is thus an "agency of instrumentality of a foreign state." 28 U.S.C. § 1603(b); *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 98 (2d Cir. 2014).

12.  Under 28 U.S.C. § 1605(a)(6), the Foreign Sovereign Immunities Act ("**FSIA**") provides an arbitration exception to independently confer subject matter jurisdiction to recognize and enforce the Final Award against Respondent. Specifically, the "arbitration" exception in 28 U.S.C. § 1605(a)(6) confers jurisdiction in an action "to confirm an award made pursuant to [an agency or instrumentality] agreement to arbitrate" and "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." These requirements are satisfied here: the Final Award that Petitioner seeks to recognize and enforce is a product of the arbitration agreement between Petitioner and Pemex Refinación, with Respondent assuming all obligations, and it is governed by the New York and Panama Conventions.

13.  The Court has personal jurisdiction over Respondent pursuant to 28 U.S.C. § 1330(b), which authorizes personal jurisdiction over a foreign state (including an agency or instrumentality of a foreign state, such as Respondent) that is not immune from suit, provided that service of process is effected in accordance with 28 U.S.C. § 1608, which governs service on agencies and instrumentalities of a foreign state. Petitioner will serve Respondent in accordance with 28 U.S.C. § 1608.

14.  The Supreme Court has determined that foreign states and their instrumentalities, under the FSIA, do not enjoy additional jurisdictional protections of the Due Process Clause beyond those contained within the FSIA itself. *CC/Devas (Mauritius) Ltd., et. Al v. Antrix Corp. Ltd., et al.*, 605 U.S. 223, 237, 145 S. Ct. 1572, 1582, 221 L. Ed. 2d 867 (2025). That is, "[p]ersonal jurisdiction exists under § 1330(b) of the FSIA when an immunity exception applies and service is proper." *Id*. Here, the arbitration exception applies under 28 U.S.C. § 1605(a)(6) and Petitioner will serve Respondent in accordance with 28 U.S.C. § 1608.

15.  Finally, venue in this District is proper pursuant to 9 U.S.C. §§ 204, 301, 302 and 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### A.  The Contract Between Hidrocadereyta and Pemex Tri

16.  On July 9, 2013, the Parties entered in a Mixed Public Works Contract (*Contrato de Obra Publica Mixto*) No. PXR-OP-SCC-SPR-GPA-L-10-13 (previously defined as the "**Contract**"). Zamora Decl., ¶ 6, Exh. C.

17.  Pursuant to the Contract, Petitioner was engaged to provide comprehensive services for the development of hydrogen generation plant No. 2 and a 12-inch-diameter pipeline to transport high-pressure natural gas from the Ramones–Escobedo spur into the 'Ing. Héctor R. Lara Sosa' refinery, located in the city of Cadereyta Jiménez, Nuevo León, Mexico, including: engineering, procurement, and construction; testing and training; and pre-start-up, start-up, and performance testing. Zamora Decl., Exh. C; Zamora Decl., Exh. A, ¶ 142. Petitioner's scope also covered: the procurement, supply, handling, and transport to site of equipment and materials; construction, assembly, and integration with existing facilities; and the provision of applicable guarantees and insurance, with compliance with labor, safety, and environmental requirements. Pemex Refinación agreed to pay the contract price in accordance with the Contract. *Id.*

18.  Contract payments were processed through periodic estimates, reviewed and authorized by Pemex Refinación within specified days. Upon authorization, Pemex Refinación had 20 days to pay invoices, and the contractor had 5 days after receipt to raise any payment claim, failing which payments were deemed accepted. *Id.* at ¶¶ 151-53.

19.  The Contract commencement date was July 12, 2013, with an original completion date of December 10, 2015. *Id.* at ¶ 154. However, this was later extended by amendment to April 22,

2016, due to adjustments to the execution program. *Id.*

20. On March 22, 2016, Petitioner notified Pemex Tri that its failure to make regular payments had given rise to certain breaches in the execution of the Contract.[6] *Id.* at ¶ 155.

21. On April 1, 2016, the parties signed a "Contract Suspension Act" to temporary suspend works under the Contract due to Pemex's budget reductions. *Id.* at ¶¶ 157-58. The suspension was set for 120 days from April 1, 2016, with a probable resumption date noted, and the agreement documented that Pemex Tri decided to totally and temporarily suspend execution of the works covered by the Contract. *Id.* at ¶ 157.

22. Pemex Tri issued numerous extensions of the suspension over subsequent years. The record reflects at least 20+ extensions communicated by Pemex Tri to Petitioner through 2021, with the Tribunal noting the pattern and timeline in the procedural history. *Id.* at ¶ 165.

23. Despite suspension, certain estimates were recognized and paid during the suspension period, evidencing that some pre-suspension and post-suspension estimates were processed and paid. *Id.* at ¶¶ 175-76.

24. On August 13, 2019, Petitioner formally demanded payment of approved estimates pending payment, approximately MXN 49.6 million and USD 7.34 million, requesting payment within 20 days. *Id.* at ¶ 166. Pemex Tri responded on August 28, 2019 that the validity of the request remained subject to the Contract's terms and conditions. *Id.* at ¶¶ 167.

25. On January 9, 2020, Petitioner notified Pemex Tri of its decision to unilaterally terminate the Contract, citing Pemex Tri's failure to pay the August 13, 2019 demand within the contractual period and Pemex Tri's continued suspension extensions. *Id.* at ¶ 171. Petitioner requested

---

[6] Because Pemex Refinación and other Pemex subsidiaries were reorganized into Pemex Tri,, when the Petitioner sent notice of the breach in March 2016, the notice was addressed to Pemex Tri. Zamora Decl., ¶ 7, Exh. D

payment of approved and pending estimates, non-recoverable expenses, damages, third-party claims, and exchange-rate adjustments. *Id*.

26. On October 16, 2019, Petitioner's shareholders authorized initiating legal or arbitral actions against Pemex Tri in relation to the Contract, thus paving way for arbitration. *Id.* at ¶ 177.

## B. The Arbitration

27. On January 30, 2020, Petitioner commenced the Arbitration against Pemex Tri. Zamora Decl, Exh. A, ¶ 12. The Arbitration was governed by the ICC Rules and was seated in Mexico City, Mexico pursuant to the arbitration agreement (the "**Arbitration Agreement**") in Clause 33 of the Contract, which provides:

> *This CONTRACT shall be governed by the Federal Laws of the United Mexican States and other provisions in force. In the event of any controversy arising in connection with this CONTRACT or disagreement between the parties regarding the interpretation of the clauses of the CONTRACT or issues arising from its execution, the parties expressly agree to submit to arbitration conducted by the International Chamber of Commerce, with the rules applicable to the procedure being those of the Arbitration Rules of the International Chamber of Commerce in force at that time. The number of arbitrators shall be 3 (three), the language to conduct the arbitration shall be Spanish, the laws applicable to the substance of the controversies or disagreements shall be the Mexican Federal Laws, the seat of arbitration shall be Mexico City, Federal District, in the United Mexican States.*

> *The following shall not be subject to arbitration: administrative rescission, early termination of the CONTRACT, as well as the cases established by the Rule of Law.*

> *Notwithstanding the foregoing, in the event of a claim or discrepancy of a technical or administrative nature, the CONTRACTOR shall first exhaust the procedure set forth in Clause Twenty Seven, titled "Dispute Prevention and Resolution Mechanisms"; solely in the event that the parties fail to reach an agreement through this procedure or through the concessions referred to in the clause titled "Conciliation," if it has been chosen, shall the CONTRACTOR have the right to refer the matter to the authority set forth in this clause.*

28. Both Petitioner and Pemex Tri nominated arbitrators who served on the Tribunal, as

confirmed by the ICC on May 26, 2020. *Id.* at ¶ 29. On September 16, 2020, the ICC confirmed Ms. Analia Gonzales Rivero as the president of the Tribunal. *Id.* at ¶ 42.

29.  Petitioner and Pemex Tri both appeared and participated in the Arbitration with the assistance of counsel. *See id.* at ¶¶ 52, 104. The parties submitted extensive briefs and exhibits throughout the Arbitration, and the Tribunal held a virtual hearing during April 4-6, 2022. *Id.* at ¶ 103. Additionally, both parties submitted post-hearing briefs. *Id.* at ¶ 114.

30.  The Tribunal rendered the Award on December 22, 2022, and made the following rulings:

> *In relation to its jurisdiction, the Arbitration Tribunal resolves that:*
>
> > *1)  It is competent to resolve the dispute between the Parties, in accordance with Clause 33 of the Contract, since the dispute between the Parties does not arise from matters of an exclusively technical or administrative nature and, therefore, the present dispute is outside the scope of Clause 27 of the Contract.*
> >
> > *2)  It is competent to decree the rescission of the Contract, in accordance with Clause 14.3 of the Contract.*
> >
> > *3)  It is not limited to the making of a declaratory award and is therefore entitled to rule on the economic benefits claimed in this Arbitration, in accordance with the Contract, the Applicable Laws and the ICC Rules.*
>
> *With regard to the merits of the dispute between the Parties, the Arbitration Tribunal resolves as follows:*
>
> > *1)  Declares that Pemex has breached the Contract, having omitted to make some of the payments to which it was obligated under the Contract vis-à-vis HidroCadereyta.*
> >
> > *2)  Declares the rescission of the Contract in accordance with Clause 14.3 of the Contract, derived from the noncompliance of Pemex of some of its payment obligations with HidroCadereyta.*
> >
> > *3)  Orders Pemex to pay the amount of MXN 22,645,451.20 for the item of Approved Estimates Pending Payment by Unit Price.*
> >
> > *4)  Orders Pemex to pay the amount of USD 890,604.97 dollars for the item of Approved Estimates Pending Payment by Lump Sum.*

*5) Orders Pemex to pay the amounts of USD 9,485,190.27 and MXN 38,451,585.33 for Approved Estimates Pending Payment for Unrecoverable Expenses.*

*6) Orders Pemex to pay the amounts of USD 1,037,447.15 and MXN 10,993,915.90 pesos for the item of Estimates Pending Approval and Payment, amounts that include the condemnation for the following items:*

    *a. Engineering hours per water table, USD 30,698.40.*
    *b. Compensation for Unexecuted Scope, MXN 602,141.59.*
    *c. Financial Expenses and Exchange Effect, MXN 6,931,502.93 and USD 242,849.46.*
    *d. Manufacture of Pipe Supports, MXN 1,134,881.31.*
    *e. Atypical Rainfall, USD 304,612.82 dollars.*
    *f. Pending items until the conclusion of the extension 21 of the suspension, MXN 2,265,390.03 and USD 459,286.47.*

*7) Declares that the claims of HidroCadereyta with respect to the payments claimed for the following items are inadmissible and therefore rejects the claims of HidroCadereyta:*

    *a. Work in Progress.*
    *b. De facto suspension due to non-payment and budgetary insufficiency.*
    *c. Personnel liquidation expenses.*
    *d. Salary update.*
    *e. Additional Temporary Storage*
    *f. Affectation to Garvisa Subcontractor.*

*8) Orders the Parties to proceed with the execution of a Settlement Agreement within 90 calendar days from the notification of this award to the parties, in the terms of Clause 17 of the Contract and consistent with this arbitration award, including compliance with the obligations prior to the execution of the Settlement Agreement set forth in the Contract and in this award, including the following:*

    *a. Pemex must take possession of the executed works in order to take over the Plant, the Site and the Contract Works, within a term not to exceed 30 calendar days from the date of notification of this award, for which it must, with or without the presence of HidroCadereyta, prepare a detailed report in the presence of a notary public of the condition of the work (including the condition of the works, equipment and materials installed at the site), which will serve as the basis for the Settlement;*

10

*b. HidroCadereyta must return to Pemex, within 20 calendar days from the date of notification of the award, all the documentation that Pemex had delivered to it for the performance of the works;*

*c. Pemex must make the payment corresponding to the Approved Estimates Pending Payment, as well as the Pending Approval and Payment Estimates for the amounts indicated in this award (plus interest in accordance with the provisions of this award), and the respective payments must be made in accordance with the terms and terms established in this award.*

*9) Rejects HidroCadereyta's claim regarding claims by subcontractors and third parties arising from the rescission of the Contract.*

*10) Rejects HidroCadereyta's claim that the Arbitration Tribunal should order Pemex to pay the demobilization expenses incurred by HidroCadereyta as a consequence of the Rescission.*

*11)Rejects HidroCadereyta's claim that the Arbitration Tribunal should award Pemex for damages suffered as a consequence of the Site Thefts.*

*12) Orders Pemex to pay interest on the sums it has been directed to pay in accordance with the rate established by the "Federal Revenue Law in cases of Extension for the Payment of Tax Credits" pursuant to the provisions of Section XI, Paragraph 2.2 of this award—that is:*

*a. In the case of Approved Estimates Pending Payment by Unit Price, interest shall begin to accrue from the 21st day after the invoice for the aforementioned Approved Estimates Pending Payment was issued up to the date of effective payment. In the case of Approved Estimates Pending Payment by Comprehensive Price (Altran could only verify the issuance of an invoice for Estimate PI38 but could not locate invoices for Estimates PI39 to PI43), interest shall begin to accrue for Estimate PI38 from the 21st day after the invoice was issued up to the date of effective payment and, for Estimates PI39 to PI43, from the 21st day after the presentation of the respective invoices for collection up to the date of effective payment.*

*b. In the case of the payment of the Approved Estimates Pending Payment indicated in the preceding subsection corresponding to Unrecoverable Expenses (pesos) and*

*Unrecoverable Expenses (dollars), the Respondent shall pay interest at a rate equal to that established by the Federal Revenue Law in the cases of Extension for the Payment of Tax Credits, for each fiscal year during which Pemex's payment obligations were breached.*

*c.  Interest will begin to run for the case of Estimates in which an invoice was generated (GNR01 to GNR09 dollars, and GNR01 to GNR13 pesos), from the 21st day after the notification of the present award, until the date of effective payment, given that the payment of the Non Recoverable Expenses is due once the Suspension is lifted, which occurs with the issuance of the present award; and in the case of Estimates GNR10 to GNR15 (dollars) and Estimates GNR14 to GNR20 (pesos) (no invoice was generated), as of the 21st day after the presentation of the respective invoices for collection, until the date of actual payment.*

*d.  In the case of the condemnation to pay the Pending Approval and Payment Estimates for Unit Price, Lump Sum, Non Recoverable Expenses and Damages, the Respondent shall pay interest at the rates set forth above, equal to those established by the Federal Revenue Law in cases of extension for the payment of tax credits for the years during which Pemex has defaulted with respect to the Claimant, which shall begin to run as of the 21st day after the presentation of the respective invoices for collection, until the date of actual payment*

*13) Orders Pemex to pay 45.81% of the costs incurred in the legal defense of HidroCadereyta for legal fees and expert opinion fees in accordance with the provisions of Section XII of this award.*

*14) Orders each Party to bear its costs corresponding to payments to ICC, and expenses for the preparation of the Arbitration and attendance at the Hearing (transportation, lodging, food, notarial notifications, administration of the Hearing, stenographic service, visual presentations).*

*15) Rejects any other claims or requests of the parties that have not been expressly accepted by the Arbitration Tribunal in this award.*

*Id.* at ¶ 814.

31.  On March 14, 2023, Petitioner submitted a timely correction request, after which the ICC

Secretariat established a briefing schedule and the parties exchanged written submissions. *Id.* at

12

¶¶ 12-16.

32. The Tribunal rendered the Addendum on June 16, 2023, ruling the following:

*1. The Arbitration Tribunal has the power to Correct the Arbitration Award.*

*2. The Claimant's Request for Correction is granted, and the following corrections are made to the Final Award:*

*a) Paragraph 746 of the Arbitration Award is hereby corrected, to be worded as follows:*

> *In the case of Approved and Pending Payment Estimates in both dollars and pesos for Comprehensive Price 38 to 43, as well as Unit Price 30 to 37 and AC-J01, interest shall begin to accrue when the parties have defined the amount to be paid and shall be calculated on the unpaid amounts, to be computed by calendar days from when they are determined until the date on which the amounts are effectively made available to the CONTRACTOR.*

*b) Paragraph 814 number 12 subsection a of the Arbitration Award is hereby corrected to read as follows:*

> *In the case of Approved and Pending Payment Estimates in both dollars and pesos for Comprehensive Price 38 to 43, as well as Unit Price 30 to 37 and AC-J01, interest shall begin to accrue when the parties have defined the amount to be paid and shall be calculated on the unpaid amounts, to be computed by calendar days from when they are determined until the date on which the amounts are effectively made available to the CONTRACTOR.*

*c)Paragraph 742 of the Arbitration Award is hereby corrected, to be worded as follows:*

> *Based on the conclusions reached by the Arbitration Tribunal in the aforementioned Section for each of the claims, and the Arbitration Tribunal having concluded that the Termination of the Contract is appropriate in accordance with Clause 14.3 thereof, the Arbitration Tribunal orders Pemex to: (i) pay MXN 61,097,036.53 and USD 10,375,795.24 for Approved and Pending Payment Estimates; (ii) pay MXN 10,933,915.9 and USD 1,037,447.15 for Pending Approval and Payment Estimates, these payments falling due at the time indicated in*

13

*the following subsection regarding the Signing of a Settlement.*

*Id.* at ¶ 77.

33.  Petitioner was served with the Addendum on July 10, 2023. Zamora Decl., ¶ 15.

34.  Respondent, as the current debtor under the Final Award, has failed to pay any of the amounts due as of the date of this filing. Zamora Decl., ¶ 21.

## ARGUMENT

35.  In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974), the United States Supreme Court explained that "[t]he goals of the [New York] Convention … was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in signatory countries." The Second Circuit has observed that the Panama Convention was also intended by Congress "to reach the same results as those reached under the New York Convention . . . ." *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45 (2d Cir. 1994). Accordingly, "the Panama Convention is substantively identical to the New York Convention and [the] authority interpreting one may be applied to the other." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 62 n.2 (2d Cir. 2022) (*citing Corporación Mexicana*, 832 F.3d at 105).

36.  "[C]onfirmation of an arbitration decision [including under the New York and Panama Conventions] is a 'summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Gomez de Hernandez v. Wells Fargo Advisors, LLC*, No. 16 CIV 9922 (LGS), 2017 WL 3088396, at *2 (S.D.N.Y. July 20, 2017) (*quoting Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015); *see also Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) ("Confirmation under the [New York] Convention is a summary proceeding

in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm."). As such, a district court's role in reviewing an arbitral award is narrowly limited. *Agility Public Warehousing Co. v. Supreme Foodservice GmbH*, 840 F. Supp. 2d 703, 710 (S.D.N.Y. 2011), aff'd, 495 F. App'x 149 (2d Cir. 2012); *see also Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009) (explaining that review is limited "to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."). Consistent with their purpose of reducing obstacles to confirmation, the New York and Panama Conventions reflect a general "pro-enforcement bias." *Corporación Mexicana*, 832 F.3d at 105 *(citing Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc*., 126 F.3d 15, 20 (2d Cir. 1997)).

37. This Petition should be granted because, as demonstrated below: (i) all statutory conditions for recognition and enforcement are satisfied; and (ii) none of the limited grounds for refusal to confirm exist. *See Banco de Seguros del Estado v. Mut. Marine Offices, Inc*., 257 Supp. 2d 681, 685 (S.D.N.Y. 2003).

### A. Petitioner Has Satisfied All of the Statutory Conditions for Recognition and Enforcement

38. This Petition falls within the recognition and enforcement regimes of the New York and Panama Conventions and satisfies the statutory requirements for recognition and enforcement of each.

39. The FAA incorporates the New York and Panama Conventions into federal law and authorizes federal courts to enforce foreign arbitral awards governed by those Conventions. 9 U.S.C. §§ 201, 301. Article I(1) of the New York Convention states that it "shall apply to the recognition and enforcement of arbitral awards . . . not considered as domestic awards in the State

15

where their recognition or enforcement is sought." Section 202 of the FAA provides that an award is considered non-domestic if it arises out of a legal relationship that is "not entirely between citizens of the United States" or that "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202*; see Yusuf Ahmed Alghanim*, 126 F.3d at 19. Similarly, an arbitral award falls under the Panama Convention if it "aris[es] out of a legal relationship", which is considered "commercial" and not "entirely between citizens of the United States." 9 U.S.C. §§ 202, 302.

40.   Here, the Final Award satisfies the requirements for both the New York Convention and the Panama Convention. The Final Award arose from a commercial legal relationship between Hidrocadereyta (an entity organized under the laws of Mexico) and Pemex Tri (an entity organized under the laws of Mexico and an agency or instrumentality of Mexico). Given the commercial nature of the relationship and the foreign nationality of both Petitioner and Pemex Tri, and now Respondent, the Final Award falls within the scope of both Conventions.

41.   Finally, the Petition is timely under the three-year statute of limitations set forth in the FAA. *See* 9 U.S.C. § 207; *see also* 9 U.S.C. § 302. The Tribunal served the Addendum on July 10, 2023, containing substantive modifications to the Award, including revisions to the applicable interest rate and the final amounts owed. Zamora Decl., Exh. B, ¶ 77. This therefore constituted the Final Award that Petitioner now seeks to confirm and enforce. This understanding is consistent with the interpretation under Mexican law, the law of the seat of the Arbitration, where an arbitral award is considered to be made upon the service of any final addendum. Zamora Decl., ¶ 17.

42.   Even if the Court were to conclude that the issuance of the Addendum is not the triggering event for the purpose of the three-year limitation, the Petition is still timely. The Award was

served upon Petitioner on February 17, 2023. Zamora Decl., Exh. B, ¶ 11. Even the courtesy copy of the Award, which was explicitly noted to not trigger any time limits provided for in the Arbitration Rules, was issued on January 30, 2023. *Id.* at ¶ 9. Accordingly, the Petition is timely using this date as well.

**B.  None of the Limited Grounds to Refuse Recognition and Enforcement Exist**

43.  The FAA mandates that a court "shall confirm the award" unless one of the grounds for refusal specified in the Convention[s] applies. 9 U.S.C. §§ 207, 302; *see e.g.*, *Telenor Mobile*, 584 F.3d at 405; *In re Oltchim, SA.*, 348 F. Supp. 2d 97, 100 (S.D.N.Y. 2004). However, the party asserting an exception to recognition bears the burden of establishing the grounds for refusal. *MGM Productions Group v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772, 776 n.6 (S.D.N.Y. 2003), aff'd, 91 F. App'x 716 (2d Cir. Feb. 9, 2004); *see also Agility Public Warehousing*, 840 F. Supp. 2d at 710 (noting that "the burden of proof required to avoid confirmation is very high.").

44.  None of the grounds for refusing enforcement of an award set forth in Article V of the New York Convention and/or Article 5 of Panama Convention apply here.

<u>**CONCLUSION**</u>

45.  For the foregoing reasons, Petitioner respectfully petitions this Court pursuant to the New York Convention, the Panama Convention, and Chapter 2 and 3 of the FAA, to:

a.  Enter an order recognizing and enforcing the Final Award against Respondent;

b.  Enter judgment in favor of Petitioner and against Respondent in the amount of the Final Award, with interest as provided therein;

c.  Enter judgment that Respondent is liable to Petitioner for post-judgment interest at the applicable statutory rate;

d.  Enter an order requiring Respondent to pay the costs incurred by Petitioner in

17

connection with this proceeding; and

    e.  Award any further relief as may be just and proper.


DATED: January 30, 2026        Respectfully submitted,


By: _s/ Bernardo M. Cremades Román_

Bernardo M. Cremades Román


B. CREMADES Y ASOCIADOS
Goya 18, Planta 2
28001 Madrid, Spain
+34 914 237 200
bcr@bcremades.com